ATCHISON & EASTERN BRIDGE COMPANY, Appellant, v. COMMERCE TRUST COMPANY and WILLIAM D. PRATT.—No. 38777.—179 S. W. (2d) 722.

Division Two, April 3, 1944.

Rehearing and Motion to Transfer to Banc Denied, May 2, 1944.

*Raymond G. Barnett* and *William L. West* for appellant.

*Clyde Taylor* and *Harry L. Jacobs* for respondent.

886

■■■■■■■

■■■ TIPTON, J.—In the Circuit Court of Jackson County, Missouri, the appellant filed an action against the Commerce Trust Company to recover a special deposit of $25,000. The Trust Company filed an answer in the nature of a bill of interpleader, stating that it claimed no interest in the deposit, but that it was claimed by both the appellant and respondent and asked that both appellant and respondent file their respective claims to this fund. The trial court sustained the Trust Company's plea, and both appellant and respondent filed their claims to this fund, which grew out of a contract between them dated March 17, 1936. The trial court found that respondent had not fulfilled his part of the contract and denied his claim for the $25,000, but did sustain respondent's claim of an oral modification of that contract alleged by him to have been made on December 15, 1936, and awarded him $12,500 to be paid out of the fund. The appellant appealed from that judgment, but respondent did not appeal the denial of his claim that he had fulfilled his part of the written contract.

The appellant owned a toll bridge at Atchison, Kansas, which crossed the Missouri River at that place, its eastern terminal being in Missouri. Sometime in 1935, the Highway Departments of the States of Missouri and Kansas had taken steps to build a free bridge at or near Atchison, Kansas. If and when the free bridge was built, of course the appellant would lose its tolls from pedestrian and vehicular

traffic, leaving tolls to be collected only from the railroads and telegraphic companies that used the toll bridge.

On November 14, 1935, in order to end the controversy about a free bridge, appellant submitted to the Highway Departments of Missouri and Kansas a proposition, which is, substantially, as follows:

That the appellant should convey to Missouri and Kansas its bridge for a consideration of One Dollar; pay a $15,000 obligation of the two states already incurred for designs for a new bridge; continue to pay all costs of maintenance of the railroad tracks on the bridge; that the two states should, upon receipt of the appellant's conveyance, reconvey to appellant the right to all railroad and wire tolls; maintain the bridge except the railroad tracks; assure appellant against taxes on account of the bridge; regulate the traffic over the bridge and operate the draw span; and to permit the appellant to collect and retain the vehicular traffic for one more year. These tolls ran from $50,000 to $60,000 a year.

On March 3, 1936, the Missouri State Highway Commission adopted a resolution to the effect that it should join with the Kansas State Highway Department in the construction of a new bridge.

In the early part of the year 1936, it became apparent that no man connected with appellant's organization was capable of coping with the situation in regard to its offer of November 14, 1935, and the appellant sought the services of a man outside its organization. Appellant was introduced to respondent, William D. Pratt, of Fredonia, Kansas. Pratt was a man of large business experience in the State of Kansas, was and had been a prominent leader in the Republican party of that State, whose governor was Alfred Landon, a Republican, and after some conference, appellant and respondent entered into the following written contract:

"In consideration of the conditions and related agreements stated below it is agreed between the parties signing below as follows:

"1. It is believed by the 'Company' that the 'Employee' has ability to convince proper authorities of the economic merit and advisability of accepting the proposition of the Company and of the economic inadvisability of incurring the cost involved in participation in building a new and additional highway bridge ('bridge' including approaches) at Atchison, Kansas, for the advantages same would furnish.

"The Company employs the Employee, and the Employee accepts the employment, for the purpose, to the extent and on terms as follows:

"The employment, without expense or charge to the employer except as hereinafter provided, shall continue for one year unless sooner terminated by success or failure as set forth below, and for the further period of twelve months after the first year if desired by the Employee under special circumstances stated below in paragraph '2.'

"If the Employee succeeds, for a period of at least one year, in convincing the Kansas authorities of the advisability of taking, and it takes no further substantial steps in furtherance of actual construction of such new bridge (to be deemed for the purpose of this agreement sufficient evidence of final decision to abandon participation therein), the Company shall pay to the Employee the sum of $25,000.00 and/or if at any time before the expiration of such year the employee shall convince the Kansas authorities that they should, and they do, by proper resolution taken and recorded upon their records, rescind all theretofore action in furtherance of such actual construction and agree to join with the Missouri authorities in accepting above mentioned proposition of the Company, the Company shall forthwith pay the Employee said sum for services.

"If at any time within such year either Kansas Commission or said Missouri Commission shall proceed to actual construction of said bridge or the City of Atchison shall take official steps providing financial assistance toward such construction and the Employee shall deem it advisable in the interest of earning any compensation herein provided for to institute legal proceedings to prevent continuance of any such acts, the Employee may institute same in the name of the Company or any taxpayer to enjoin further proceedings, or if the Company notifies the Employee that it desires any proceedings instituted they shall be instituted and the Employee shall bear the expense of such legal proceedings to final determination except that the Company may furnish cooperative legal assistance at its own expense. But the Company agrees to furnish the services of W. F. Guthrie at its expense for his services and his personal expense. Failure of the Employee to so institute and prosecute legal proceedings requested by the Company shall terminate this contract. Action of the Kansas Commission, or of any of its officials or employees before passage of the above mentioned resolution in agreeing 'upon such terms as may hereafter be agreed upon' as contemplated by resolution of the Missouri Commission on or about March 3, 1936, or otherwise in cooperation with the Missouri Commission towards such construction shall be taken as conclusive evidence of the inability of the Employee to successfully render the services for which compensation is to be paid, and said check shall be forthwith returned to the Company.

"As security for such compensation, the Company shall forthwith deliver to the Trustee a cashable check for the above amount on its account with Commerce Trust Company, and said Trustee is authorized to direct and the Company will also forthwith direct, said Trust Company ▇▇ not to cash any other check on said account which will reduce such account below said amount at any time preceding the termination of the right of Employee to compensation and said Trustee accepts said check to be cashed for the benefit of the Employee at any time the Employee is entitled to the amount thereof or returned

to the Company should the right of the Employee for compensation be terminated as above.

"In the event the Employee, prior to one year, receives above mentioned sum from the Trustees pursuant to the passage of the resolution as above provided and thereafter, but still within such year, the Kansas Commission rescinds such resolution or rescission and acceptance or proceeds with any act in furtherance of such actual construction, the Employee agrees to refund such sum to the Company as not in fact earned as contemplated.

"2. It is further believed by the Employer and Employee that if said Kansas Commission rescinds and accepts as above, or takes no further action within one year, in either event, said Missouri Commission will, with or without the request of others than the parties hereto, decide the question of such construction by accepting said proposition of the Company. While the Employee agrees to use any reasonable efforts to further final acceptance and contract thereunder, it is understood that efforts towards final consummation in the above event will necessarily principally be by the Company, but, as a further consideration to said Employee for services herein contemplated, the Company agrees that if at any time before two years from date and before right to compensation to be paid the Employee under Clause '1' hereof may have been terminated, a contract between the Company and said Commissions is duly executed, in substance conforming to said proposition of the Company, the Company shall forthwith pay the Employee an additional sum of $25,000.

"3. The Employee pledges himself as a matter of good faith to relinquish any claim under this agreement if conditions should develop apparently demonstrating to him his inability to perform the services herein provided for. But it is recognized there can be stated no definite standard by which to determine such inability otherwise than as hereinbefore stated, and the determination and decision by the Employee in such respect shall be final, conclusive and binding upon all parties.

> "The Atchison & Eastern Bridge 'Company'
> "By (Signed) W. F. Guthrie, Vice President
> "(Signed) William D. Pratt, 'Employee'

"The undersigned joins in this agreement only as Trustee of the check and for disposition as above provided, and is not otherwise under obligations in the premises.

> "(Signed) F. C. Marqua, Trustee
> "(Filed November 2, 1938.)"

Respondent associated with him other prominent men who lived in Kansas, principally T. E. Wagstaff and Jay W. Scovel, lawyers who lived at Independence, Kansas. This City was, also, the home of Governor Landon. Respondent and his associates contacted the Governor, members of the Highway Department of the State of Kansas,

and presented arguments as to why the free bridge should not be built. Apparently they did all that could be honorably done to prevent the building of the free bridge; however, respondent failed to prevent the Kansas Commission from taking "further substantial steps in furtherance of actual construction of the new bridge," as actual construction started during the week ending March 6, 1937.

Respondent's pleading, upon which the case was tried, asserted (1) that respondent was entitled to the $25,000 under the terms of the written contract of March 17, 1936, as he had substantially performed his part of the contract; and (2) respondent, also, claimed that he was entitled to payment from the fund because in December of 1936, appellant orally agreed with him in substance that he should continue his employment and efforts and should in any event at least be compensated for his services theretofore and thereafter rendered, and Interpleaded Pratt did continue in such employment and did render further services.

The effect of appellant's pleading was that respondent had not performed his part of the written contract of March 17, 1936, and that there was no oral agreement of December, 1936, as respondent claimed. At least, these were the issues before the trial court.

The trial court found that respondent had not performed his part of the written contract of March 17, 1936, and since ▆ the respondent did not appeal, this issue is not before us. However, the trial court did sustain respondent's second claim that the written contract was modified by an oral agreement in December, 1936, that if respondent would continue his efforts he would be compensated for his services theretofore and thereafter rendered and awarded respondent $12,500 out of the fund held by the Commerce Trust Company. From this award, the appellant has duly appealed to this Court.

▆ The real or principal issue before us was the contract of March, 1936, modified in December, 1936, as claimed by respondent. The respondent in substance testified that Howard P. Eells, appellant president, promised him if he would continue his efforts he would be paid for his services theretofore and thereafter performed. However, Eells denied making such an agreement. Ordinarily, in equity such as this, we would be inclined to follow the findings of the Trial Chancellor if his findings are based solely on conflicting evidence of the parties, and would be inclined to do so in this case if this were a case of Pratt's testimony conflicting with Eells, but it is not. In this case, there are circumstances and documentary evidence that compels us to weigh the evidence.

▆ The burden was upon respondent to prove by the weight of the evidence that the contract was modified in December, 1936, as he claims. A careful examination of the evidence convinces us that the weight of the evidence does not sustain the respondent.

On cross-examination, respondent testified as follows:

"Q. December, 1936. A. Yes, they told me to proceed and they would see that I was properly compensated for the work that had been done and that I was to do, either by myself or by my agents.

"Q. (Interrupting) Just a minute, you are more or less stating the conclusion of the entire conversation. I am asking you to state in substance what you said to them and in substance what Mr. Eells said to you. A. I was directed—I don't know whether it was Mr. Eells or Mr. Guthrie told me, but they told me to go right ahead, that they had in mind getting additional assistance and asked me if I had any objection, and I said, 'Certainly not.'

"Q. Now, have you stated all of the conversation that took place on that occasion with reference to this bridge matter? A. No, because I don't remember all of the conversation.

"Q. Was there any conversation with reference to any different arrangement for your compensation than that stated in the contract? A. I recall that I was going to be amply compensated for the work I had done and was to do subsequently.

"Q. That was under the contract, is that right? . . .

[An objection was made to this question, but the objection was overruled.]

"A. To the best of my knowledge the contract was not mentioned when they brought up the questions we discussed." [The Mr. Guthrie referred to in this testimony was vice president and counsel of the appellant.]

Respondent testified that he was working under the written contract at all times, and that it was never terminated, although under the terms of the contract, he had a right to terminate it before the expiration of the year. He testified as follows: "Q. Was there any time when this written contract was terminated, the contract of March 17, 1936? . . . A. No. Q. As I understand it, it was your understanding, then, clear up until the date of March 17, 1937, that the contract had not been terminated? . . . A. Yes." Respondent contends that his testimony was substantiated by a letter dated April 17, 1937, written by Eells and addressed to Mr. Marqua. This letter is as follows:

"Dear Mr. Marqua:

"I have your letter of the 16th with copy of yours of the 13th to Mr. Guthrie. The latter is on a vacation, hence the reason for my failure to receive your advice to him.

"This represents a most amazing situation. I assume you know that such assistance as Mr. Pratt attempted has availed nothing and that the construction of the bridge is under way.

"If you will refer to the agreement under which the deposit was

made you will note amongst other bases for terminating the agreement paragraph reading as follows:

" 'Action of the Kansas Commission or of any of its officials or employees before passage of the above mentioned resolution in agreeing "upon such terms as may be hereafter agreed upon" as contemplated by resolution of the Missouri Commission on or about March 3, 1936, or otherwise in cooperation with the Missouri Commission towards such construction shall be taken as conclusive evidence of the inability of the employee to successfully render the services for which compensation is to be paid, and said check shall be forthwith returned to the Company.'

"Under this paragraph the agreement with Mr. Pratt has been rendered void innumerable times within the past year. We did not withdraw the account principally because you and other officers of your bank have assisted us in one way or another during the past year and we wished to give evidence of our appreciation for such assistance. *Furthermore, Mr. Pratt was working with us with the understanding verbally acknowledged by him that the agreement was long since terminated but that depending upon results he could count upon us to compensate him proportionately. We felt that holding the balance in Kansas would be some little evidence of such an intent even though, which I believe is not the case, he might lack confidence in our good faith.*

"If you remain unwilling after referring to the agreement to honor our check covering this account will you be good enough to advise me definitely on what grounds you take such a stand. Please also tell me wherein arises the obligation for you to obtain Mr. Pratt's consent before releasing this money. ·

"Very truly yours,
"(Signed) H. P. Eells, Jr., President."

Appellant relies upon the above part of the letter in italics. However, in regard to the meeting of December 15, 1936, at which Pratt, Eells, and Guthrie were present, Eells testified in substance as follows: He denied the testimony of respondent and further testified that conditions had changed in that Huxman, a Democrat, was elected Governor of Kansas; that appellant thought it was now essential to have someone else to try to dispose of its bridge; that while the contract of March 17, 1936, was silent as being an exclusive contract, yet both parties had so treated it as such and respondent stated it was agreeable to him to get someone else in the deal; and "That since Mr. Pratt's compensation hinged upon results achieved, since prior to that period it was perfectly easy to ascribe results, because Mr. Pratt was working alone in the field, situations had changed, others were working. If it was found that results were wholly ascribable to Mr. Pratt's efforts, there would be no question, but if results were ascribable to his efforts as well as

those of another, there was a question of proportional compensation;" that the appellant did employ the Democratic National Committman from the State of Kansas; that the primary consideration of the appellant was to sell the bridge, and its secondary consideration was to delay the building of the new bridge as long as possible, because the longer the delay, the more time appellant would have to sell the bridge; and that the "results" referred to in the above letter referred to the sale of the bridge.

We see nothing inconsistent in the italicized portion of the letter that is in conflict with Eells testimony, and when the letter is read as a whole, we find nothing in the letter that corroborates respondent.

Evidently, the then Democratic National Committteeman was brought into the picture because the State of Kansas had elected a Democratic governor who would assume office in the early part of January. Does it sound reasonable that a business man would say to respondent, who was active in Republican politics, "Now you probably will not be able to earn your compensation under our written contract of March 17, 1936, because your Republican governor will be out of office in about three weeks, but nevertheless, appellant will pay you for past services and future services?" Certainly not. The appellant by employing the Democratic National Committeeman shows that its officer thought it was necessary to get some Democratic support to present arguments as to why the State of Kansas should buy its bridge.

Respondent contends that the "results" referred to meant delaying the building of a new bridge, because the appellant wanted to collect as much in tolls as possible. Granting this to be true, still we do not believe appellant would obligate itself to pay $25,000 or even $12,500 to respondent to collect tolls just for three more months when the gross income from such tolls was about $50,000 a year, or $12,500 for three months.

On March 18, 1937, respondent wrote Mr. Marqua asking him if there was any reason why he should not transfer the $25,000 to respondent. Not one word was ▇▇▇ said in this letter about any modification of the written contract.

Carl Rice, an attorney, prepared for respondent a memorandum, that was presented to appellant, which was really an argument as to why Pratt had complied with his part of the contract of March 17, 1936. The principal reason assigned was that he was actually employed orally in February, 1936. Again there was no mention of the December, 1936, modification.

Respondent says it was not necessary to mention the modification of December, 1936, because he was claiming that he had fulfilled his contract and was entitled to the full sum of $25,000, and it was only necessary to mention the modification in court.

But when did he mention this in court? On July 25, 1939, his deposition was taken, in which he testified: "Q. Hadn't the Bridge Company, prior to the end of that year, made an agreement with you orally as to different terms for compensation? A. Prior to the expiration of the contract? Q. Yes. A. I believe not."

At the time of this deposition, respondent had filed his second pleading setting forth his claim for the $25,000, and neither in this pleading nor in the first pleading he filed, did he make any claim of an oral modification. His testimony given at the trial of this case is in conflict with his testimony given in his deposition.

On November 2, 1938, respondent filed a pleading in this case which he titled, "Answer by William D. Pratt to Commerce Trust Company's Answer, Cross Action and Petition." Count One of this pleading stated that Pratt was entitled to the $25,000 because he performed his part of the contract of March 17, 1936. Count Two alleges an oral contract dated on or about February 17, 1936, which was similar to the written contract except as to date.

On December 30, 1938, respondent filed another pleading that was titled, "Pleading by way of Answer by William D. Pratt Who has been Interpleaded in this Case." This pleading states that it became apparent that he could not technically meet the terms of the written contract and on April 19, 1937, it was verbally agreed between appellant and respondent that he should be paid the reasonable value for his services.

This pleading was also abandoned and on May 4, 1940, respondent then filed a pleading titled, "Amended Answer and Claim to the Interpleaded Fund by William D. Pratt." In effect, this pleading stated that the actual contract was entered into early in February, 1936, and that the written contract of March 17, 1936, was merely a memorandum of the existing contract which in reality ended in February, 1937. For the first time, respondent says anything about the oral modification of December, 1936.

On February 24, 1942, respondent filed his pleading upon which the issues of this case were tried.

As we view the testimony of respondent in regard to his alleged modification, it is largely conclusions and is contrary to what he stated in his deposition. Moreover, his version as to what transpired at the meeting of December 15, 1936, is not plausible for the reasons we have already stated. Under the facts in this record, there could be no good reason to change a contingent contract to one where appellant must pay for respondent's services without regards to results. Again, the documentary evidence including his first two abandoned pleadings makes no mention of this alleged modification.

We conclude the weight of the evidence on this issue is against the respondent, and the judgment of the trial court is reversed and the cause remanded for the trial court to enter a judgment in conformity with this opinion. It is so ordered. All concur.